**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2873<br>Master Docket No: 2:18-mn-2873-RMG |

| | |
|---|---|
| CTY OF STILLWATER, OKLAHOMA, an Oklahoma Municipal Corporation<br><br>    *Plaintiff*,<br><br>v.<br><br>3M COMPANY, (f/k/a Minnesota Mining and Manufacturing Company);<br>AGC CHEMICALS AMERICAS INC. (f/k/a Asahi Glass Co., Ltd.;<br>ARCHROMA U.S., INC.;<br>ARKEMA INC.;<br>BASF CORPORATION;<br>BUCKEYE FIRE EQUIPMENT COMPANY;<br>CHEMDESIGN PRODUCTS, INC;<br>CHEMGUARD, INC.;<br>CHEMICALS INC.;<br>CLARIANT CORPORATION, individually and as successor in interest to DuPont Chemical Solutions Enterprise;<br>CORTEVA, INC. individually and as successor in interest to DuPont Chemical Solutions Enterprise;<br>DEEPWATER CHEMICALS, INC.;<br>DUPONT DE NEMOURS INC. (f/k/a DOWDUPONT, INC.);<br>DYNAX CORPORATION;<br>E.I. DUPONT DE NEMOURS AND COMPANY (n/k/a EIDP, Inc.), individually and as successor to DuPont Chemical Solutions Enterprises;<br>RAYTHEON TECHNOLOGIES CORPORATION (f/k/a/ United Technologies Corporation); | DIRECT FILED ACTION:<br><br>Judge Richard Mark Gergel<br><br>Civil Action No.<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL. |

THE CHEMOURS COMPANY, individually
and as successor in interest to DuPont Chemical
Solutions Enterprise;
THE CHEMOURS COMPANY FC, LLC,
individually and as successor in interest to
DuPont Chemical Solutions Enterprise;
TYCO FIRE PRODUCTS L.P.,
DOES 1 through 100, inclusive.

     *Defendants.*

## **COMPLAINT**

Plaintiff, the City of Stillwater, Oklahoma (the "City" or "Plaintiff"), by and through their

undersigned counsel, brings this action against Defendants and alleges and states as follows:

## **SUMMARY OF THE CASE**

1.     Plaintiff brings this action against Defendants to recover any and all past and future

compensatory and consequential damages for the investigation, remediation, removal, treatment,

disposal, and monitoring of the PFAS (defined herein), contamination at and from all real and

personal property in which Plaintiff has an ownership, operational or other legal interest ("Plaintiff's

Property") – including, but not limited, all surface water, groundwater, soil, sediment, biota and

structures at, on or under Plaintiff's Property -- which contamination was caused and/or created by

Defendants' PFAS Products (as defined herein), as well as punitive damages and any other relief

necessary to fully address the environmental contamination caused by Defendants' PFAS Products

at and from Plaintiff's Property.

2.     PFAS is a generic term used to describe the class of synthetic (man-made) chemical

compounds referred to a per- and polyfluoroalky compounds.

3.     Two of the most common, and most studied PFAS compounds are perfluorooctane

sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA").

4.     PFAS compounds, including but not limited to, PFOS and PFOA are persistent in the environment (*i.e.*, do not break down naturally), easily travel through soil and groundwater, and present a serious threat to human health and safety and the environment.

5.     As used herein, the phrase "PFAS Product" includes any and all products that either are themselves a PFAS compound, or that contain a PFAS compound.

6.     Plaintiff's Property has been, and continues to be, contaminated by Defendants' PFAS Products, with some of the more severe contamination being caused by the use and release of PFAS Products at the airport owned and/or operated by Plaintiff.

7.     From at least the 1960s to the present, Defendants manufactured, marketed, and/or sold a class of PFAS Products known as aqueous film-forming foam ("AFFF").

8.     AFFF is a firefighting agent designed to control and extinguish fuel and chemical fires.

9.     For many years, Defendants were aware that the PFAS Products they manufactured, marketed, promoted, sold, and/or distributed to government agencies, industrial clients, and consumers -- including, but not limited to PFOS, PFOA and AFFF -- were persistent in the environment, accumulated in living organisms, and posed toxic risks.

10.     Defendants also knew that AFFF containing PFOS and PFOA was being released into the environment during firefighting training and actual firefighting activities at military bases, airports, fire training academies, refineries, and other sites where AFFF was used as intended.

11.     For many years, and continuing to the present day, AFFF has been used and stored by Plaintiff and others for fire protection, training, and emergency response activities at various locations on Plaintiff's Property.  During these activities, AFFF was applied according to the manufacturer's instructions, resulting in the release of PFOA and PFOS and other PFAS Products

and "precursors" (forms of PFAS that transform into PFOS, PFOA and other PFAS compounds) into the environment.

12. When AFFF was sprayed on outdoor surfaces as intended, PFAS Products therein moved through soil surface, surface water and into subsoils and groundwater, leading to contamination of Plaintiff's Property and nearby property.

13. Upon information and belief, as a result of the use of AFFF and other PFAS Products for their intended purpose, PFOS and PFOA and a variety of other PFAS Products have and/or will been found in the groundwater beneath Plaintiff's Property at significant levels. Based on the presence of such PFAS Products, and upon information and belief, multiple areas on Plaintiff's Property—including, but not limited to soil, surface water, groundwater, sediment, biota and structures—have been contaminated with PFOS, PFOA and other PFAS Products.

14. At all relevant times, Plaintiff was unaware, and should not have been aware, of the ongoing contamination of Plaintiff's Property caused by PFAS Products including, but not limited to AFFF, insofar as Defendants hid and failed to disclose the toxic nature and harmful effects of the AFFF and other PFAS Products they designed, manufactured, marketed and sold.

15. Through this action, Plaintiff seeks to recover compensatory and consequential damages for all past and future costs to investigate, remediate, remove, treat, dispose of, and monitor PFOS, PFOA and all other PFAS Products on and from Plaintiff's Property caused by the use of Defendants' AFFF and/or other PFAS Products on Plaintiff's Property, as well as any and all punitive damages recoverable under Oklahoma and/or applicable federal laws.

16. Plaintiff also seeks damages and restitution for the diminution in value of Plaintiff's Property, as well as reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

17.     This action is direct filed in MDL 2873 pursuant to Case Management Order No. 3.

18.     Pursuant to paragraph 27 of CMO 3, Plaintiff identifies as a "Home Venue" the United States District Court for the Western District of Oklahoma.

19.     Plaintiff further identifies 28 U.S.C. § 1442(a)(1) as a jurisdictional basis for this action to be prosecuted in the United States District Court for the Western District of Oklahoma and thus this Honorable Court.

## PARTIES

### *PLAINTIFF*

20.     Plaintiff is a Municipal Corporation duly formed in accordance with the laws of the State of Oklahoma.

21.     The City owns the property that is the subject of this Complaint, including but not limited to the Stillwater Regional Airport (the "Airport"), and the City's drinking water supply, treatment and distribution systems ("Water System"), and the City's storm water, wastewater and sewage collection, treatment and disposal systems.

### *DEFENDANTS*

22.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

23.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

24.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or

properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

25. **Defendant 3M Company (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M")** is a Delaware Corporation and conducts business throughout the United States, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. 3M Company has designed, manufactured, marketed, promoted, distributed, and/or sold AFFF Products from the 1960s until 2002. 3M is registered to do business in Oklahoma. At all times relevant, 3M has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant 3M's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

26. Defendant **AGC Chemicals Americas, Inc. (f/k/a/ Asahi Glass Co., Ltd.)("AGC")** is a Delaware corporation with its principal place of business at 5 East Uwchlan Avenue, Suite 201 Exton, Pennsylvania 19341. AGC designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS Products. At all times relevant, AGC has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and

this action arises out of and/or relates to Defendant AGC's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

27.     Defendant **Archroma U.S., Inc. ("Archroma")** is a Delaware corporation with its principal place of business at 5435 77 Center Drive, Suite 10, Charlotte, North Carolina 28217. Archroma is registered to do business in Oklahoma. Archroma designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Archroma has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Archroma's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

28.     Defendant **Arkema, Inc. ("Arkema")** is a Pennsylvania corporation with its principal place of business at 900 First Avenue, King of Prussia, Pennsylvania 19406. On information and belief, Arkema was formerly known as Atochem, Inc. and/or is the successor-in-interest to Atochem, Inc. Arkema is registered to do business in Oklahoma. Arkema designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Arkema has purposefully availed itself of the privilege of conducting business

in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Arkema's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

29.     Defendant **BASF Corp. ("BASF")** is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. BASF is a successor-in-interest to Ciba-Geigy Corp. BASF is registered to do business in Oklahoma.  BASF designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, BASF has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant BASF's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

30.     Defendant **Buckeye Fire Equipment Co. ("Buckeye")** is an Ohio corporation with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086. Buckeye designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Buckeye has purposefully availed itself of the privilege of conducting

business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Buckeye's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

31.     Defendant **ChemDesign Products, Inc. ("ChemDesign")** is a Texas corporation with its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143. ChemDesign designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, ChemDesign has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant ChemDesign's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

32.     Defendant **Chemguard, Inc. ("Chemguard")** is a Texas corporation with its principal place of business at 1 Stanton Street, Marinette, Wisconsin 54143. Chemguard designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Chemguard has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to

distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemguard's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

33.     Defendant **Clariant Corp. ("Clariant")** is a New York corporation with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Clariant has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Clariant's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

34.     Defendant **Corteva, Inc. ("Corteva")** is a Delaware corporation with its principal place of business at 974 Centre Rd., Wilmington, Delaware 19805. Corteva designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Corteva has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be

sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Corteva's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

35.     Defendant **DuPont de Nemours, Inc. f/k/a DowDuPont, Inc. ("New DuPont")** is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. New DuPont is registered to do business in Oklahoma. New DuPont designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, New DuPont has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant New DuPont's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

36.     Defendant **E.I. du Pont de Nemours and Co. ("Old DuPont")** is a Delaware corporation with its headquarters and principal place of business at 974 Centre Road Wilmington, Delaware 19805. Old DuPont designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Old DuPont has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of

Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out and/or relates to Defendant Old DuPont's contacts with Oklahoma, including its having of business transacted in, as well as a tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

37.    Defendant **The Chemours Company ("Chemours Co.")** is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19889. Chemours Co. was previously a subsidiary of Old DuPont and was spun out of Old DuPont into an independent, publicly traded company on July 1, 2015. Chemours Co. designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Chemours Co. has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out and/or relates to Defendant Chemours Co.'s contacts with Oklahoma, including committing tortious actions and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

38.    Defendant **The Chemours Co. FC, LLC ("Chemours Co. FC")** is a Delaware LLC with its principal place of business in Wilmington, Delaware. Chemours Co. FC, LLC is a wholly-owned subsidiary of Chemours Co.  Chemours Co. FC was previously a subsidiary of Old DuPont and was spun out of Old DuPont into an independent, publicly traded company on July 1, 2015.

Chemours Co. FC is registered to do business in Oklahoma. Chemours Co. FC designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Chemours Co. FC has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemours Co. FC's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

39. Defendants **Chemours Co. and Chemours Co. FC** are jointly referred to herein as "Chemours." Chemours designed, manufactured, marketed, sold, and/or distributed fluorosurfactants containing or breaking down into PFAS for use in the manufacture of AFFF.

40. Chemours, Corteva, New DuPont, and Old DuPont are referred to collectively as **"DuPont."** For decades, DuPont manufactured PFAS Products, including PFOA, which DuPont obtained from 3M. In the early 2000s, after 3M had ceased the manufacture of PFOS and PFOA, DuPont itself began to manufacture PFOA. DuPont designed, manufactured, marketed, sold, and/or distributed fluorosurfactants containing or breaking down into PFAS for use in the manufacture of AFFF.

41. Defendant **Tyco Fire Products LP ("Tyco")** is a Delaware limited partnership with its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco is the parent corporation to Chemguard and successor-in-interest to the Ansul Company. Tyco is registered to do business in Oklahoma. Tyco designed, manufactured, marketed, sold, and/or

distributed AFFF containing or breaking down into PFAS. At all times relevant, Tyco has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Tyco's contacts with Oklahoma, including committing acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

42.     Defendant **Chemicals Inc.** is a Texas corporation with its principal place of business at 12321 Hatcherville Road Baytown, Texas 77521. Chemicals Inc. designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Chemicals Inc. has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemicals Inc.'s contacts with Oklahoma, including committing tortious actions and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

43.     Defendant **Deepwater Chemicals, Inc. ("Deepwater")** is a Delaware corporation with its principal place of business at 196122 E County Road 40, Woodward, Oklahoma 73801. Deepwater is registered to do business in Oklahoma. Deepwater designed, manufactured, marketed,

sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Deepwater has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Deepwater's contacts with Oklahoma, including committing tortious actions and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

44.    Defendant **Dynax Corp. ("Dynax")** is a Delaware corporation with its principal place of business at 79 Westchester Avenue, Pound Ridge, New York 10576.  Dynax designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS. At all times relevant, Dynax has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Dynax's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

45.    Defendant **Raytheon Technologies corporation (f/k/a United Technologies Corporation (Raytheon Tech f/k/a United Tech")** is a Delaware corporation with its principal place of business at 1000 Wilson Blvd, Arlington, VA  22209.  At all times relevant, Raytheon has

purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its PFAS Products in the State of Oklahoma, regularly caused its PFAS Products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Raytheon's contacts with Oklahoma, including committing tortious acts and/or omissions in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

46.    Fictitiously named Doe Defendants 1-100 unknown at this time, designed, manufactured, marketed, sold, and/or distributed AFFF containing or breaking down into PFAS that have resulted in injuries to the Plaintiff, or otherwise share responsibility for such injuries. When these Doe Defendants are identified, they will be added by name.

## FACTUAL ALLEGATIONS
### THE CONTAMINANTS: PFOA & PFOS

47.    PFOS and PFOA are two chemicals belonging to a class of compounds known as perfluoroalkyl acids ("PFAAs").  PFAAs are part of the larger family of PFAS.  A PFAA consists of a chain of carbon atoms, with all but one carbon atom bonded to fluorine atoms, while the final carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds in nature, which is why PFAS molecules are highly persistent and tend to bioaccumulate.

48.    PFAAs are categorized as either long-chain or short-chain based on the number of carbon atoms in their carbon chain. PFOA and PFOS are considered long-chain PFAAs because each contains eight carbon atoms in their respective chains.

49.     PFOS and PFOA are stable, man-made chemicals that are highly water-soluble, persistent in the environment, and resistant to biological, environmental, or photochemical degradation. Due to their water solubility and low tendency to bind to sediments or soil, these compounds remain in the water column and can be transported through subsurface soil and groundwater over long distances.

50.     PFOS and PFOA are easily absorbed into animal and human tissues following oral exposure, accumulating in the serum, kidneys, and liver. These chemicals have been detected worldwide in water, soil, and air, as well as in human food sources, breast milk, umbilical cord blood, and plasma samples of breastfed toddlers.[1]

51.     PFOS and PFOA are the two most widely known and studied PFAS. PFOS and PFOA are persistent in the human body and resistant to metabolic breakdown. Even short-term exposure can lead to an accumulation in the body that remains for years and can accumulate further with additional exposures.

52.     Since their introduction, evidence has emerged linking exposure to PFOS and PFOA and other PFAS with harmful health effects.

53.     According to the EPA, "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[2]

---

[1]     *See* Risk to Human Health Related to the Presence of Perfluoroalkyl Substances in Food, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC7507523/

[2]     *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas

54.    EPA has also cautioned that there is suggestive evidence indicating the carcinogenic potential of PFOS and PFOA in humans.[3]

55.    The EPA has noted that drinking water can be an additional source of PFOS/PFOA in the body where such chemicals have contaminated water supplies.[4]

56.    PFOS and/or PFOA are key components of AFFF, as used for its intended purposes on Plaintiff's Property.

### AFFF Products

57.    AFFF is a water-based foam that was originally developed in the 1960s to combat flammable liquid fuel fires, particularly at airports and other similar locations.

58.    AFFF is also used in structural or other types of non-chemical fires when water cannot penetrate deeply enough to ensure that unseen fire is extinguished.

59.    AFFF contains PFAS.

60.    AFFF is used in fire extinguishment in a manner typical of routine methods of fire extinguishment—by being sprayed through a fire hose, appliance, or nozzle.

61.    The techniques used for "laying a blanket" of AFFF in fire extinguishment include banking the foam off a wall or vertical surface to agitate the foam before it covers the fire, or applying it to the ground surface where the fire is burning. In structure fires, it can also be necessary to spray the ceilings, walls, and floors. Reapplication of foam is often necessary because the foam blanket will break down over a short time.

---

[3] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf

[4] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/sites/default/files/201606/documents/drinkingwaterhealthadvisories_pfoa_pfos_updated_5.31.16.pdf

62.     When used as intended and directed by the Defendants, the AFFF sold to and used by Plaintiff and others at Plaintiff's Property, including the Airport, released PFAS including, but not limited to, PFOS and/or PFOA into the environment.

63.     Once in soils, PFAS are soluble and can be transported into surface water or leach into groundwater.

64.     Once introduced into groundwater or surface water, PFAS spread quickly because they easily dissolve in water.

### PFAS From AFFF Products Has Impacted Plaintiff' Property

65.     PFAS including, but not limited to, PFOS and PFOA have been detected in varying amounts and at different times in the soil and water at the Plaintiff's Properties.

66.     Plaintiff asserts that any detectable level of PFOS and/or PFOA in the soil, surface water, groundwater, sediments, or elsewhere on Plaintiff's Property requires thorough investigation, remediation, and ongoing monitoring.

67.     Moreover, upon information and belief, PFOS and PFOA have been found at the Airport and other parts of Plaintiff's Properties at levels significantly higher than the current federally recommended Health Advisory Level and drinking water Maximum Contaminant Levels.

68.     The detection and/or presence of PFOS and PFOA, along with the ongoing risk of further contamination, have caused, and will continue to cause, substantial harm and damage to Plaintiff.

69.     Upon information and belief, the contamination of Plaintiff's Property with AFFF, including but not limited to PFOS and PFOA, is ongoing—new contamination continuously flows onto Plaintiff's Property daily, causing fresh harm to Plaintiff with each occurrence.

70.     The harm caused to Plaintiff by Defendants' actions represents an unreasonable interference with and damage to Plaintiff's Property. Plaintiff has a legitimate interest in protecting its property and seek damages adequate to restore the property to its condition prior to contamination.

### Defendants' History of Manufacturing and Selling PFAS-Containing AFFF

71.     Upon information and belief, since the 1960s, AFFF that meet MIL-F-24385 specifications have been developed in collaboration with the United States Department of Defense ("DOD") to extinguish fires at military bases, airports, oil refineries, and firefighting training facilities across the United States. The AFFF was produced by various manufacturers and/or their subsidiaries, including but not limited to Defendants 3M, Buckeye, Chemguard, and Tyco.

72.     Upon information and belief, DOD purchased AFFF exclusively from 3M and Tyco from the 1960s through 2001.

73.     Upon information and belief, Defendants DuPont, BASF, Dynax, Clariant, Chemours, Archroma, Arkema, ChemDesign, Raytheon, and AGC, all designed, manufactured, marketed, distributed, and sold PFAS Products for use as component products in the manufacture of AFFF Products.

74.     Upon information and belief, Defendants Chemicals, Inc. and Deepwater designed, manufactured, marketed, distributed, and sold products containing PFAS and/or their chemical precursors for use in the manufacture of AFFF Products.

75.     Upon information and belief, Defendants knew of the risks of AFFF and PFAS Products to the environment and health.

76.     Indeed, Defendant 3M knew of the potential threats posed by AFFF and PFAS Products by at least 1970.

77.    In the November 1970 issue of Fire Journal, the National Fire Protection Association (NFPA) published a letter by S.I. Kalkstein, the President of Chemical Concentrates Corporation titled "Toxicity of 'Light Water' to Fish," which advised that tests of 3M's AFFF demonstrated that it was so "highly deleterious to marine life . . . [that] the entire test program had to be abandoned to avoid severe local stream pollution."[5]

78.    Indeed, a 1970 study by 3M found that a lethal dose of PFAS in fish was as low as 1 ppm, the lowest concentration tested. At this level, the fish were unable to swim upright and died within weeks of exposure to PFAS. Fish exposed to 4 ppm of PFAS died within days, while those exposed to 12.5 ppm died within hours, and fish exposed to 125 ppm died within minutes.

79.    In response to Kalkstein's letter, Hugh G. Bryce, the Technical Director of 3M's Chemical Division, wrote that 3M conducted tests to evaluate the safety of its AFFF and that "tak[ing] into account the remote possibility that significant quantities of the fire-extinguishing agent would enter a body of water, as well as the fact that relatively high levels can be tolerated, it appears from a practical point of view that the use of 'Light Water' brand agents could not have any significant adverse effect on fish or other marine life in either fresh or salt water."  *Id*.

80.    As leading manufacturers in the industry, Defendants knew or should have known about the potential harmful effects of AFFF, as outlined in Kalkstein's letter.

81.    In 1975, 3M, the sole manufacturer of PFOS, discovered that PFOS was present in the blood of the general population. By 1976, 3M confirmed that PFAS was bioaccumulating in the blood of its employees.

82.    In 1978, 3M conducted a study of PFAS toxicity in Rhesus monkeys in which every monkey involved in the study died.

---

[5]"Fire Journal", Nov. 1970, at 87

83.    3M repeated the Rhesus monkey experiment at a low dose of 4.5 ppm of PFAS, and still, every monkey involved in the study died.

84.    Upon information and belief, Defendant 3M continued to produce PFAS until 2002, and sold AFFF containing PFOS until 2003.

85.    After 3M exited the AFFF market, the remaining Defendants continued to manufacture and sell AFFF. In fact, Old DuPont seized the opportunity to capture a share of the market left behind by 3M's exit, despite having decades of evidence indicating that PFAS were highly toxic and posed significant risks to both the environment and human health.

86.    Upon information and belief, Old DuPont knew about the toxicity of PFOA as early as the 1960s and was aware that PFAS were capable of contaminating the environment.

87.    Defendants had a duty, which they breached, to notify EPA when they had information that reasonably supported the conclusion that a substance or mixture presented a substantial risk of injury to health or the environment.[6]

88.    At all times relevant to this Complaint, no containment measures were provided in the Safety Data Sheets ("SDS") (formerly Material Safety Data Sheets, or "MSDS"), nor were the health or environmental hazards associated with AFFF disclosed in the instructions, warning labels, or product packaging for AFFF.

89.    At all times relevant to this Complaint, the MSDS and SDS instructions, warning labels, and product packaging failed to fully describe or adequately warn users of all the health and environmental risks associated with AFFF, which Defendants knew or should have known about. They also failed to provide adequate information about the necessary precautions which Defendants knew or should have known were required.

---

[6] *See* Toxic Substances Control Act ("TSCA") § 8(e), 15 U.S.C. § 2607(e).

## CLAIMS FOR RELIEF

### COUNT I: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN

90.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

91.     At all times relevant to the Complaint, each of the Defendants was regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and/or labeling, of AFFF and other PFAS Products.

92.     At all times pertinent to this Complaint, each of the Defendants regularly participated in placing their respective AFFFs and other PFAS Products into the stream of commerce with actual and/or constructive knowledge that these products would be distributed to, and/or used within the State of Oklahoma.

93.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of AFFF and other PFAS Products, each of the Defendants had a duty to make and sell products that were, and are, reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses. Each of the Defendants owed that duty both to reasonably foreseeable users of their respective PFAS Products, and also to any person or property that might reasonably be expected to come into contact with those products.

94.     Each of the Defendants owed a duty to all persons whom their respective PFAS Products might foreseeably harm, including Plaintiff, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses, including AFFF and other PFAS Products.

95.     Each of the Defendants' products containing PFOS, PFOA, and/or their precursors was used in a reasonably foreseeable manner and without substantial change in the condition of each

such product. These PFAS Products were defective and unfit for their reasonable uses at the time they left each Defendants' respective possession or control. Upon information and belief, each of the Defendants' AFFF and other PFAS Products foreseeably contaminated groundwater, surface water, sediments, soils, biota, and other property at and around the locations on Plaintiff's Property where those products were used.

96.      Each of the Defendants knew, or reasonably should have known, that their respective manufacture, marketing, and/or sale, as well as their respective customers' transport, storage, use, handling, release, spilling, and/or disposal of PFAS Products including, but not limited to, AFFF in an intended or reasonably foreseeable manner would result in the release of PFOS and PFOA and other PFAS Products into the environment, including at various locations on Plaintiff's Property, contaminating groundwater, surface water, sediments, soils, biota, and other Plaintiff's Property.

97.      AFFF and other PFAS Products containing PFOS, PFOA, and/or their precursors used at Plaintiff's Property have injured and are continuing to injure groundwater, surface water, sediments, soils, biota, and other property at and/or around these sites. Each of the Defendants' AFFF and other PFAS Products was defective in design and unreasonably dangerous because, among other things:

   a. Each of the Defendants' AFFF and other PFAS Products cause extensive and persistent PFOS and PFOA contamination when used in a reasonably foreseeable and intended manner;

   b. PFOS and PFOA released into the environment from each of the Defendants' AFFF and other PFAS Products has caused contamination in groundwater and surface water that are the sources of drinking water and pose significant threats to public health and welfare; and

   c. Each of the Defendants failed to disclose reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential ecological and human health effects of AFFF and other PFAS Products containing PFOS and PFOA.

98.      At all times relevant to this action, the AFFF and other PFAS Products that each of the Defendants designed, manufactured, marketed, and sold were dangerous to groundwater,

24

surface water, sediments, soils, biota, and other property to an extent beyond that which would be contemplated by the ordinary consumer.

99.     At all times relevant to this action, the foreseeable risks to the environment, groundwater, surface water, sediments, soils, biota, and other property, as well as the public health and welfare, posed by each of the Defendants' AFFF and other PFAS Products containing PFOS, PFOA, and/or their precursors outweighed the cost to each of the Defendants of reducing or eliminating such risks in their respective products.

100.    At all times relevant to this action, each of the Defendants knew or should have known about reasonably safer and feasible alternatives to their AFFF and other PFAS Products, and the omission of such alternative designs rendered their AFFF and other PFAS Products not reasonably safe. While Defendants have recently transitioned to short-chain PFAS-based AFFF, which they claim are safer, they could have made this transition earlier. Moreover, AFFF can be designed with fluorine-free compounds, which do not contain or break down into PFAS.

101.    Upon information and belief, as a direct and proximate result of the defects in each of the Defendants' design, manufacture, marketing, and sale of AFFF and other PFAS Products containing PFOS, PFOA, and/or their precursors, groundwater, surface water, sediments, soils, biota, and other property at and/or near the various sites throughout Plaintiff's Property where the AFFF and other PFAS Products were used have become contaminated with PFOS, PFOA and other PFAS Products, causing the Plaintiff significant injury and damage.

102.    As a direct and proximate result of each of the Defendants' respective acts and omissions, as alleged herein, Plaintiff has incurred, are incurring, and will continue to incur damages in an amount to be proved at trial related to PFAS contamination, including but not limited to PFOS and PFOA contamination, of groundwater, surface water, sediment, soils, biota, and other property at

and/or near the various sites at the Airport and other Plaintiff's Property where Defendants' AFFF and other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed.

103.    Upon information and belief, as a further direct and proximate result of each of the Defendants' respective acts and omissions, Plaintiff has incurred, and will continue to incur, investigation, cleanup and removal, restoration, treatment, monitoring, and other costs and expenses related to contamination of the groundwater, surface water, sediments, soils, biota, and other property at and/or near the various sites at the Airport and at other Plaintiff's Property where Defendants' respective AFFF and other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed, for which Defendants are strictly liable.

104.    Each of the Defendants knew it was substantially certain that its respective acts and omissions described above would cause PFAS contamination, including but not limited to PFOS and PFOA contamination, of groundwater, surface water, sediment, soils, biota, and other property at and/or near the various sites at the Airport and other Plaintiff's Property where Defendants' AFFF and other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed and the other harms described herein.

105.    Each of the AFFF and other PFAS Products was in a defective condition when it left the respective Defendants' possession or control.

106.    Plaintiff did not realize the dangers posed by each of Defendants' AFFF and other PFAS Products to Plaintiff's groundwater, surface water, sediment, soils, biota, and other property.

107.    Plaintiff did not unreasonably or knowingly expose themselves to the risk posed by each of the Defendants' respective AFFF and other PFAS Products.

108.   Each of the Defendants committed the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions, and in reckless disregard of Plaintiff's rights.

109.   As a result of each of the Defendants' design, formulation and distribution of defective PFAS Products, including, but not limited to AFFF, each of the Defendants is strictly liable for all such damages arising out of contamination of Plaintiff's groundwater, surface water, sediments, soils, biota, and other property, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

### COUNT II: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

110.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

111.   As designers, manufacturers, marketers, and sellers of AFFF and other PFAS Products containing PFOS, PFOA, each of the Defendants had a strict duty to Plaintiff and to those who were foreseeably at risk of being harmed by such products to warn users of those products and Plaintiff of the foreseeable harms associated with them.

112.   Each of the Defendants knew or should have known that exposure to AFFF and other PFAS Products presented a substantial danger when used because PFAS is hazardous to human health and the environment.

113.   Each of the Defendants knew or should have known that the manner in which it was manufacturing, marketing, and selling its AFFF and other PFAS Products would result in harm to Plaintiff, including, but not limited to their groundwater, surface water, sediments, soils, biota, and other property.

114.    Ordinary consumers of Defendants' AFFF and other PFAS Products would not have recognized the risks posed by those products, including, but not limited to, the risks to Plaintiff's groundwater, surface water, sediments, soils, biota, and other property.

115.    Each of the Defendants failed to adequately warn Plaintiff of the likelihood that PFAS, including but not limited to PFOS and/or PFOA, would be released into the environment during the normal use of Defendants' respective AFFF and other PFAS Products and of the widespread, toxic, and persistent effects of such releases. Each of the Defendants failed to provide such warnings to (i) users and buyers of its AFFF and other PFAS Products containing PFOS, PFOA and/or their precursors; (ii) Plaintiff; and (iii) others to which it was reasonably foreseeable Defendants' AFFF and other PFAS Products would cause harm.

116.    Adequate instructions and warnings on the AFFF and other PFAS Products could have reduced or avoided these foreseeable risks of harm to Plaintiff and its groundwater, surface water, sediments, soils, biota, and other property.

117.    Had Defendants provided adequate warnings, users and buyers of the PFAS Products, Plaintiff, and others who would reasonably foreseeably transport, store, use, release, dispose, and/or otherwise handle or be harmed by the AFFF and other PFAS Products would have taken measures to avoid or lessen the exposure.

118.    The lack of sufficient warnings was a substantial factor in causing the groundwater, surface water, sediments, soils, biota, and other property at and around the Airport and other Plaintiff's Property where the Defendants' respective AFFF and other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed to become contaminated with PFOS, PFOA and other PFAS Products.

119.     Upon information and belief, as a direct and proximate result of each of the Defendants' failure to warn of the hazards of AFFF and other PFAS Products containing PFOS, PFOA and other PFAS Products, the groundwater, surface water, sediments, soils, biota, and other property at and around various sites at the Airport and other Plaintiff's Property where the Defendants' respective AFFF and PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed have become contaminated with PFOS, PFOA and other PFAS Products.

120.     Upon information and belief, as a direct and proximate result of each of the Defendants' acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFAS contamination from AFFF and other PFAS Products in an amount to be proven at trial.

121.     Each of the Defendants' acts and omissions was willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of persons who foreseeably might be harmed by those acts or omissions, including Plaintiff.

122.     Each of the Defendants is strictly liable for such damages to Plaintiff, and other relief as set forth below.

### COUNT III: NEGLIGENCE (All Defendants)

123.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

124.     As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of AFFF and other PFAS Products, each of the Defendants had a duty to Plaintiff to ensure that PFOS, PFOA, other PFAS Products were not released as a result of the transport, storage, use, handling, release, spilling, and/or disposal of Defendants AFFF and other PFAS Products and did not injure the environment, groundwater, surface water, sediments, soils,

biota, and other property. Each of the Defendants had a duty to Plaintiff to exercise due care in the design, manufacture, marketing, sale, testing, labeling, and instructions for use of its respective AFFF and other PFAS Products containing PFOS, PFOA, and other PFAS Products.

125.    Each of the Defendants owed a duty to the Plaintiff to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of its AFFF and other PFAS Products.

126.    Each of the Defendants breached these duties, by among other things, failing to conform to the requisite standard of care.

127.    Despite knowing that their respective AFFF and other PFAS Products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, each of the Defendants breached its respective duty of care to Plaintiff by failing to use reasonable care when it: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold AFFF and other PFAS Products; (b) issued instructions on how AFFF and other PFAS Products should be used and disposed of; (c) failed to recall and/or warn the users of AFFF and other PFAS Products of the dangers to human health and the environment as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF and other PFAS Products regarding the proper use and disposal of these products, notwithstanding the fact that each of the Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their respective AFFF and other PFAS Products.

128.    Upon information and belief, each of the Defendants' respective negligent acts and/or omissions was a direct and proximate cause of the exposure to unsafe levels of PFAS

experienced by Plaintiff's personnel, contractors and invitees, as well as in groundwater, surface water, sediments, soils, biota, and other property.

129.    Each of the Defendants' respective failure to act with reasonable care to (1) design a product to perform safely; (2) issue an adequate warning or instruction on the use of AFFF and other PFAS Products and; (3) issue a recall, was a substantial factor in causing the Plaintiff's groundwater, surface water, sediments, soils, biota, and other property at and around the Airport and other Plaintiff's Property to become contaminated with PFAS.

130.    Each of the Defendants knew, or reasonably should have known, that users and consumers would not realize the danger of Defendants' respective AFFF and other PFAS Products posed to human health and the environment.

131.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

132.    Each of the Defendants was actually or constructively aware of the dangers of their AFFF and other PFAS Products, and of their respective tortious acts or omissions, and, further, knew or should have known that their respective AFFF and other PFAS Products would, or was likely to, cause injury to groundwater, surface water, sediments, soils, biota, and other property as a result of breaches of the above-noted duties. Nevertheless, with reckless indifference to these consequences, and as previously detailed, each of the Defendants negligently, recklessly, willfully, and/or wantonly breached its respective duties owed to Plaintiff through the acts and/or omissions described herein.

133.    Upon information and belief, the groundwater, surface water, sediments, soils, biota, and other property at and around the Airport and other parts of Plaintiff's Property have become contaminated with PFAS as a direct and proximate result of each of the Defendants'

negligent acts and/or omissions in designing AFFF and other PFAS Products and in failing to warn purchasers of AFFF and other PFAS Products, Plaintiff, and others whom each of the Defendants should have reasonably foreseen would transport, store, use, handle, release, spill, and/or dispose AFFF and other PFAS Products of the harms posed by said products.

134.     The collective and respective acts and omissions of each of the Defendants were negligent, intentional, malicious, willful and/or wanton and in reckless disregard of persons who foreseeably might be harmed by those acts or omissions, including Plaintiff.

135.     Upon information and belief, as a direct and proximate result of each of the Defendants' acts and omissions, Plaintiff has incurred, are incurring, and will continue to incur costs and expenses related to the investigation, clean up and removal, treatment, disposal, monitoring, and restoration of PFAS contamination from Defendants' AFFF and other PFAS Products for which each of Defendants is liable.

### COUNT IV: CONCEALMENT & NEGLIGENT MISREPRESENTATION
### (All Defendants)

136.     Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full herein.

137.     Each of the Defendants, individually and acting through its respective employees and agents, as well as in concert with one another, knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed and/or refused to advise Plaintiff of the dangers and/or health risks posed by each of the Defendants' AFFF and other PFAS Products.

138.     Each of the Defendants, individually and acting through its respective employees and agents, as well as in concert with one another, negligently, knowingly, maliciously, willfully, wantonly, recklessly, and/or intentionally withheld, misrepresented, and/or concealed information regarding each of the Defendants' AFFF and other PFAS Products from Plaintiff, although Plaintiff

had a right to know of information that would have prevented the widespread contamination of Plaintiff's groundwater, surface water, sediments, soils, biota, and other property with PFAS.

139. For, at least, several decades, each of the Defendants had actual or constructive knowledge that their respective AFFF and other PFAS Products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to AFFF and other PFAS Products and physical injuries in humans and animals.

140. In connection with their respective AFFF and other PFAS Products, each of the Defendants have had and continue to have a duty of care to disclose to Plaintiff the actual and potential hazards to Plaintiff's groundwater, surface water, sediments, soils, biota, and other property, as well as their personnel, contractors and invitees.

141. Upon information and belief, as a direct and proximate result of each of the Defendants' acts and/or omissions, Defendants breached the duty to disclose owed to Plaintiff, exposing Plaintiff's groundwater, surface water, sediments, soils, biota, and other property to harmful levels of PFAS.

142. Through each of the Defendants' superior knowledge, responsibility, and/or control over the AFFF and other PFAS Products, and each of the Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between each of the Defendants and Plaintiff.

143. Despite each of the Defendants' respective knowledge regarding PFAS exposure, and despite each of the Defendants' duties to disclose to Plaintiff, each of the Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from Plaintiff regarding harms associated with

exposure to their AFFF and other PFAS Products with the intention to mislead Plaintiff into believing that Defendants' AFFF and other PFAS Products were not harmful, and to mislead Plaintiff into continuing to use the AFFF and other PFAS Products.

144.    Each of the Defendants withheld, misrepresented, and/or concealed information regarding PFAS exposure, and such acts and/or omissions by each Defendant was a substantial factor in causing the harm to Plaintiff described herein.

145.    Upon information and belief, as a direct and proximate result of the aforesaid acts and/or omissions by each of Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Plaintiff's groundwater, surface water, sediments, soils, biota, and other property were exposed to each of Defendants' AFFF and other PFAS Products and were harmed.

146.    Each of the Defendants, individually and acting through its employees and agents, and in concert with each other, made misrepresentations and concealed facts material to Plaintiff and others to induce them to purchase and use AFFF and other PFAS Products as set forth in detail above.

147.    Each of the Defendants knew, at the time that it made its respective misrepresentations, that such statements were false, made recklessly without knowledge of the truth, and/or had no reasonable ground for believing such assertions.

148.    Each of the Defendants intended that Plaintiff and their personnel, contractors and invitees would rely on its misrepresentations regarding the risks and efficacy of its AFFF and other PFAS Products.

149.    Each of the Defendants had, and continues to have, a duty of care to provide Plaintiff, with truthful representations regarding the actual and potential harm posed by its AFFF and other

PFAS Products, and each of the Defendants, as a direct and proximate result of each of the Defendants' respective acts and/or omissions, breached that duty owed to Plaintiff.

150.     Each of the Defendants voluntarily assumed a duty of care to provide Plaintiff with truthful representations regarding its respective AFFF and other PFAS Products and the actual and potential harm posed by said products, and, as a direct and proximate result of each of the Defendants' respective acts and/or omissions, breached that duty owed to Plaintiff. Each of the Defendants' affirmative representations and/or omissions to Plaintiff was false and was material to Plaintiff in forming the belief that the Defendants' respective AFFF and other PFAS Products were safe, in causing Plaintiff to continue to use AFFF and other PFAS Products, and in causing Plaintiff to not previously seek remediation and/or ways to remedy the past and continuing contamination of Plaintiff's groundwater, surface water, sediments, soils, biota, and other property within by PFAS.

151.     Each of the Defendants made the affirmative representations and/or omissions to Plaintiff with the intention that Plaintiff would be misled into relying on such affirmative representations and/or omissions.

152.     Plaintiff relied on each of the Defendants' affirmative representations and/or omissions in forming the belief that the Defendants' respective AFFF and other PFAS Products were safe, in causing Plaintiff to continue use AFFF and other PFAS Products, and in causing Plaintiff to not previously seek remediation and/or ways to remedy the past and continuing contamination of Plaintiff's groundwater, surface water, sediments, soils, biota, and other property by PFAS.

153.     Upon information and belief, Plaintiff was harmed as a direct and proximate result of its justified reliance on each of the Defendants' affirmative, tortious representations and/or

omissions and, as a direct and proximate result of such justified reliance, Plaintiff continued to use the AFFF and other PFAS Products.

154.    Defendants' repeated and continuing conduct was willful, wanton, and malicious and was directed at the public generally. As a result, Plaintiff seeks to recover punitive damages against Defendants.

## COUNT V: PUBLIC NUISANCE
### (All Defendants)

155.    Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

156.    Each of the Defendants, individually and acting through their employees and agents, and in concert with each other, have intentionally, recklessly, or negligently engaged in conduct or omissions which endanger or injure the property, health, safety, and/ or comfort of a considerable number of persons in those areas impacted by their production, promotion, and marketing of AFFF and other PFAS Products.

157.    Each of the Defendants' tortious conduct, misrepresentations and omissions regarding AFFF and other PFAS Products, as set forth above, has created an irreversible ecological crisis in those areas impacted, including Plaintiff's Property, that constitutes a public nuisance. Defendants have created a crisis that simultaneously affects entire communities, neighborhoods, and a considerable number of persons.

158.    Each of the Defendants has violated a public right, that is, the right to the public good, such as an indivisible resource shared by the public at large in the groundwater, surface water, sediments, soils, biota, and other natural resources.

159.     Defendants did not uphold their responsibility to put a lawful, non-defective product into the market. Rather, Defendants' introduction of AFFF and other PFAS Products into the market was inconsistent with USEPA guidelines.

160.     Defendants' misrepresentations and omissions regarding AFFF and other PFAS Products constitute unlawful acts and/or omissions of duties, which annoy, injure, or endanger the comfort, repose, health, and/or safety of others, and offend decency to a considerable number of persons in those areas impacted.

161.     Defendants have a duty to abate the nuisance they created.

162.     Defendants have failed to abate the nuisance they created.

163.     Defendants' conduct directly and proximately caused groundwater, surface water, sediment, soils, and biota at and around various sites throughout Plaintiff's Property to become contaminated with PFAS.

164.     Upon information and belief, as a direct result of the Defendants' conduct, Plaintiff has suffered economic damages including, but not limited to costs and expenses related to the investigation, clean up and removal, treatment, disposal, monitoring, and restoration of land as a result of PFAS contamination from Defendants' AFFF and other PFAS Products for which Defendants are liable.

**COUNT VI: TRESPASS**
**(All Defendants)**

165.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

166.    Each of the Defendants' intentional and/or negligent conduct caused AFFF and other PFAS Products containing PFOA, PFOS and other PFAS, to enter, invade, intrude upon, injure, trespass, and threaten to trespass upon the Plaintiff's Property.

167.    AFFF and other PFAS Products containing PFOA, PFOS and other PFAS, manufactured and/or supplied by Defendants continue to be located on or in the Plaintiff's Property.

168.    Each of the Defendants intended to manufacture AFFF and PFAS Products containing PFOA, PFOS and other PFAS, and knew with substantial certainty that their acts would contaminate the Plaintiff's Property.

169.    Each of the Defendants is therefore liable for trespass and continued trespass.

170.    Each of the Defendants did not and does not have authority, privilege, or permission to trespass upon Plaintiff's Property.

171.    Plaintiff have never consented to the trespasses alleged herein.

172.    Each of the Defendants has refused and failed to terminate their trespasses, despite being put on notice to do so by Plaintiff and by the State of Oklahoma through its policies, statutes, regulations, orders, and other means.

173.    Each of the Defendants' trespass is of a continuing nature and has produced a long-lasting negative effect upon the Plaintiff's Property, and each Defendant knew or had reason to know of these adverse effects all times relevant hereto.

174.    Based on their conduct, each of the Defendants has, at all times relevant to this action, created, caused, maintained, continued, substantially contributed to, substantially participated in, and/or assisted in the creation of such trespass. Based on their respective knowledge of the properties and manner of distribution and storage of AFFF and other PFAS Products containing PFOA, PFOS

and other PFAS, as alleged herein, each of the Defendants was aware, or should have been aware, that, as a result of its conduct, contamination of the Plaintiff's Property was inevitable or substantially certain to result.

175.    Upon information and belief, as a direct and proximate result of each of the Defendants' conduct, Plaintiff has suffered and continues to suffer damages from Defendants' conduct and the presence of AFFF and PFAS Products containing PFOA, PFOS and other PFAS, in the Plaintiff's Property, including without limitation costs to assess, investigate, monitor, analyze, remove, and remediate contamination, and costs to prevent AFFF and other PFAS Products from injuring additional property of the Plaintiff.

176.    Upon information and belief, as a direct and proximate result of each of the Defendants' acts and omissions, Plaintiff has incurred and suffered, and will continue to incur and suffer, substantial costs and damages for which Defendants are liable.

## COUNT VII: FRAUDULENT CONVEYANCE; VIOLATION OF OKLAHOMA UNIFORM FRAUDULENT TRANSFER ACT
### (DuPont Defendants)

177.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

178.    Plaintiff seeks all relief available under the Oklahoma Uniform Fraudulent Transfer Act (the "Act") for the DuPont Defendants' violations of the Act for their fraudulent conveyances as part of their various spin-off transactions.[7]

179.    Pursuant to the Oklahoma Uniform Fraudulent Transfer Act, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose

---

[7] As previously defined, the "DuPont Defendants" refers to all DuPont entities named herein, including Defendant Corteva, and all Chemours entities named herein.

before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation," with "actual intent to hinder, delay, or defraud any creditor of the debtor," or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," provided the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 24 O.S. § 116.

180.    Additionally, under the Act, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." 24 O.S. § 117(a).

181.    The DuPont Defendants engaged in acts in furtherance of a scheme to transfer DuPont's assets so that parties in PFAS litigation, such as Plaintiff, could not obtain funds or collect a judgment which they are or will be owed. As a result of the DuPont Defendants' acts, omissions, and other conduct described herein, Plaintiff has been damaged.

182.    At all relevant times, the DuPont Defendants have (1) acted with actual intent to hinder, delay, and defraud parties; (2) acted without receiving a reasonably equivalent value in exchange for the transfer obligation arising out of the DuPont-Chemours spin-off; and/or (3) were engaged or were about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business or that the business intended to incur, or those liabilities the DuPont Defendants believed or reasonably should have believed that Chemours would incur.

183.    For decades, DuPont manufactured, marketed, distributed, and/or sold PFAS Products for use in AFFF and other PFAS Products with the superior knowledge that they were toxic, mobile, persistent, bioaccumulative, and biomagnifying, and through normal and foreseen use, would impact Plaintiff's Property, employees, agents and invitees.

184.    As a result of the transfer of assets and liabilities described herein, the DuPont Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from their manufacture, marketing, distribution, and/or sale of AFFF and other PFAS Products containing PFOA, PFOS and other PFAS for use in AFFF Products.

185.    At the time of the transfer of its performance chemical business to Chemours, DuPont had been sued, had notice of suits, and/or had knowledge of likely litigation regarding DuPont's liability from the manufacture, marketing, distribution, and/or sale of AFFF and other PFAS Products containing PFOA. PFOS and other PFAS for use in AFFF Products.

186.    The DuPont Defendants acted without receiving consideration and/or a reasonably equivalent value in exchange for the transfer or obligation, and DuPont believed or reasonably should have believed that Chemours would incur debts beyond Chemours' ability to pay when those debts became due.

187.    The claims, judgment, and potential judgments against Chemours potentially exceed its ability to pay. Accordingly, Plaintiff seeks avoidance of the transfer of DuPont's liabilities for the claims brought herein and seek to hold the DuPont Defendants liable for any damages or other remedies that may be awarded by the Court or jury arising from this Complaint. Plaintiff further seeks all other rights and remedies that may be available to them under the Oklahoma Uniform Fraudulent Transfer Act, including prejudgment remedies as available under

applicable law, as may be necessary for full compensation of damages and injuries Plaintiff has suffered as alleged herein.

## COUNT VIII: CLAIM FOR UNJUST ENRICHMENT

188.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

189.    Upon information and belief, Plaintiff has incurred and will continue to incur expenses as a result of the use and presence of Defendants' AFFF and other PFAS Products at the Airport and other Plaintiff's Property, including, but not limited to, the disposal and replacement cost for AFFF and other PFAS Products, and costs for identification, investigation, monitoring, removal, remediation, treatment and disposal and other actions resulting from Defendants' acts and omissions.

190.    Defendants are responsible for costs incurred by Plaintiff in connection with the use of Defendants' AFFF and other PFAS Products at the Airport and other Plaintiff's Property. In accordance with principles of equity, Defendants should have to pay these costs. It would be unjust for Defendants to retain the benefits of their sale of AFFF and other PFAS Products used, released and/or disposed at the Airport and other Plaintiff's Property. Defendants have been unjustly enriched at Plaintiff's expense, and failure to make restitution would be inequitable.

191.    Plaintiff request restitution for the full amount by Defendants were unjustly enriched and an injunction requiring Defendants to return all monies by which they were unjustly enriched as a result of the purchase and use of Defendants AFFF and other PFAS Products by Plaintiff and other parties at Plaintiff's Properties.

## COUNT IX: CLAIM FOR COMMON LAW AND UCC BREACH OF IMPLIED WARRANTIES

192.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

193.     Defendants are merchants with respect to the AFFF and other PFAS Products.

194.     Defendants' AFFF and other PFAS Products are not fit for the ordinary purposes for which such products are used and are not adequately labeled.

195.     Defendants AFFF and other PFAS Products are not merchantable.

196.     At the time of sale, Defendants knew the particular purpose for which their AFFF Products and other PFAS Products were being purchased.  Such AFFF and other PFAS Products were not fit for such purpose.

197.     Plaintiff and others relied on Defendants' skill and judgment to furnish suitable AFFF and other PFAS Products.

198.     Upon information and belief, Defendants, in selling their products, breach implied warranties of merchantability and fitness, which were a producing and proximate cause of Plaintiff's damages.

## COUNT X:  CLAIM FOR VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT

199.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

200.     Plaintiff is consumer of Defendants' AFFF and other PFAS Products.

201.     Defendants engaged in unlawful practices. Specifically, Defendants made false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits, of their products, which were the subject of a consumer transaction, and committed unfair and

deceptive trade practices, as defined by 15 Okla. Stat. § 752 through misrepresentations, omissions, and other practices that have deceived and could reasonably be expected to have deceived or mislead a person to the detriment of that person and through practices which offend established public policy and which are immoral, unethical oppressive, unscrupulous, and substantially injurious to consumers.

202.    Defendants' unlawful practices occurred in the course of Defendants' business.

203.    Defendants' unlawful practices caused an injury in fact to Plaintiff as a consumer.

204.    Defendants' commission of acts and practices in violation of the Oklahoma Consumer Protection Act are unconscionable.

205.    Upon information and belief, as a result of Defendants' unlawful practices, Plaintiff has sustained actual damages and has incurred costs of litigation.

### CLAIM FOR PUNITIVE DAMAGES[8]

206.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

207.    Upon information and belief, each of the Defendants' negligent, reckless, willful,

---

[8] The City does not claim punitive damages as follows:

A.    From 3M Company, to the extent precluded by the Settlement Agreement Between Public Water Systems and Defendant 3M Company (*City of Camden v. 3M Company*, 2:23-cv-03147-RMG, Dkt. Nos. 10-3 and 59-1) (the "3M Settlement Agreement");

B.    From DuPont de Nemours, Inc., E.I. DuPont de Nemours and Company n/k/a/ EIDP, Inc., The Chemours Company, The Chemours Company FC, LLC, and Corteva, Inc., to the extent precluded by the Settlement Agreement Between Public Water Systems and said Defendants (*City of Camden v E.I. DuPont de Nemours & Co. (n/k/a/ EIDP, Inc.) et al*, 2:23-cv-03230-RMG, Dkt. No. 4-2) (the "DuPont Settlement Agreement");

C.    From Tyco Fire Products LP, to the extent precluded by the Settlement Agreement Between Public Water Systems and Defendant Tyco Fire Products LP (*City of Camden v Tyco Fire Products LP et al*, 2:24-cv-02321- RMG, Dkt. No. 5-3) (the "Tyco Settlement Agreement"); and

D.    From BASF Corporation, to the extent precluded by the Settlement Agreement Between Public Water Systems and Defendant BASF Corporation (*City of Camden v. BASF Corporation*, 2:24-cv-03174-RMG, (the "BASF Settlement Agreement").

and/or wanton actions and/or intentional failures to act caused Plaintiff's Property to be exposed to and contaminated with AFFF and other PFAS Products containing PFOA, PFOS, other PFAS for use in AFFF and other PFAS Products.

208.    The willful, wanton, malicious, and/or reckless conduct of each of the Defendants, includes, but is not limited to:

      a.    issuing no warnings and failing to divulge material information concerning the release of PFAS, including, but not limited to PFOA and PFOS;

      b.    failing to take all reasonable measures to ensure AFFF and other PFAS Products would be used effectively and properly disposed of; and

      c.    failing to prevent the foreseeable impacts of PFAS contamination upon the Plaintiff.

209.    Each of the Defendants acted with malice, purposely, and intentionally. At a minimum, each of the Defendants engaged in the conduct alleged herein with a conscious disregard for the rights and safety of other persons, even though that conduct had a great probability of causing substantial harm.

210.    Plaintiff is entitled to punitive damages in addition to actual damages from Defendants.

## RELEASED CLAIMS

211.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

212.    Pursuant to the Settlement Agreement Between Public Water Systems and Defendant 3M Company (City of Camden v. 3M Company, 2:23-cv-03147-RMG, Dkt. Nos. 10-3 and 59-1) (the "3M Settlement Agreement"), the City hereby affirms that (i) the 3M Settlement Agreement has fully and finally resolved all its Claims against the Released Parties, as defined in

the 3M Settlement Agreement, arising out of, related to, or involving PFAS that has entered or is associated with Drinking Water or the City's Public Water System and (ii) its Claims against the Released Parties do not arise out of, relate to, or involve (a) PFAS that has entered or is associated with Drinking Water or the City's Public Water System (including Claims seeking damages, abatement, or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source) or (b) treatment, filtration, or remediation to address PFAS in or to prevent PFAS from entering Drinking Water or the City's Public Water System. As against the Released Parties, the City is not seeking damages, treatment, filtration, or remediation that in any way arises out of, relates to, or involves PFAS that has entered or is associated with Drinking Water or the City's Public Water System (including Claims seeking abatement or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source or seeking treatment, filtration, or remediation to address PFAS in or prevent PFAS from entering Drinking Water or the City's Public Water System).

213.    Pursuant to the Settlement Agreement Between Public Water Systems and Defendant Tyco Fire Products LP (City of Camden v Tyco Fire Products LP et al, 2:24-cv-02321-RMG, Dkt. No. 5-3) (the "Tyco Settlement Agreement"), the City hereby affirms that (i) the Tyco Settlement Agreement has fully and finally resolved all its Claims against the Released Parties, as defined in the Tyco Settlement Agreement, arising out of, related to, or involving PFAS that has entered or is associated with Drinking Water or the City's Public Water System and (ii) its Claims against the Released Parties do not arise out of, relate to, or involve (a) PFAS that has entered or is associated with Drinking Water or the City's Public Water System (including Claims seeking damages, abatement, or other relief to prevent or pay the cost to prevent PFAS from entering any

Public Water System from a Water Source or any other source) or (b) treatment, filtration, or remediation to address PFAS in or to prevent PFAS from entering Drinking Water or the City's Public Water System. As against the Released Parties, the City is not seeking damages, treatment, filtration, or remediation that in any way arises out of, relates to, or involves PFAS that has entered or is associated with Drinking Water or the City's Public Water System (including Claims seeking abatement or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source or seeking treatment, filtration, or remediation to address PFAS in or prevent PFAS from entering Drinking Water or the City's Public Water System).

214.     Pursuant to the Settlement Agreement Between Public Water Systems and Defendant BASF (City of Camden v. BASF Corporation, 2:24-cv-03174-RMG, Dkt. No. 5-3) (the "BASF Settlement Agreement"), the City hereby affirms that (i) the BASF Settlement Agreement has fully and finally resolved all its Claims against the Released Parties, as defined in the BASF Settlement Agreement, arising out of, related to, or involving PFAS that has entered or is associated with Drinking Water or the City's Public Water System and (ii) its Claims against the Released Parties do not arise out of, relate to, or involve (a) PFAS that has entered or is associated with Drinking Water or the City's Public Water System (including Claims seeking damages, abatement, or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source) or (b) treatment, filtration, or remediation to address PFAS in or to prevent PFAS from entering Drinking Water or the City's Public Water System. As against the Released Parties, the City is not seeking damages, treatment, filtration, or remediation that in any way arises out of, relates to, or involves PFAS that has entered or is associated with Drinking Water or the City's Public Water System (including Claims seeking

abatement or other relief to prevent or pay the cost to prevent PFAS from entering any Public Water System from a Water Source or any other source or seeking treatment, filtration, or remediation to address PFAS in or prevent PFAS from entering Drinking Water or the City's Public Water System).

215.    Pursuant to the Settlement Agreement Between Public Water Systems and the DuPont Defendants (City of Camden, et al. v. E.I. DuPont de Nemours & Co. (n/k/a EIDP, Inc.), et al., No. 2:23-cv-3230-RMG (D.S.C.), Dkt. Nos. 4-2 and 30-1) (the "DuPont Settlement Agreement"), the City hereby affirms that the DuPont Settlement Agreement has fully and finally resolved all its Claims against the Released Parties that are Released Claims, as defined in the DuPont Settlement Agreement, respectively. The City reserves all rights to assert all Claims against the DuPont Defendants that are not Released Claims.

## CLAIM FOR ATTORNEY'S FEES AND COST

216.    Plaintiff seeks to recover damages resulting from Defendants' negligent and/or willful injury to Plaintiff's Property.

217.    Pursuant to 12 Okla. Stat. § 940, the prevailing party may recover reasonable attorney's fees, court cost and interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks judgment against Defendants as follows:

a.    Finding Defendants liable for all costs, in an amount that exceeds $75,000.00, (i) to collect, return, and dispose of existing stocks of Defendants' AFFF and other PFAS Products at Plaintiff's Property; (ii) to investigate, clean up and remove, restore, treat, dispose, monitor, and otherwise respond to PFOS, PFOA, other PFAS contamination at and around the sites throughout Plaintiff's Property where Defendants' AFFF and/or PFAS Products were transported, stored, used,

48

handled, released, spilled, and/or disposed so the contaminated groundwater, surface water, sediments, soils, biota, and other property are restored to their original condition;

b.    Finding Defendants liable for all damages, in an amount that exceeds $75,000.00, to compensate the Plaintiff for the lost use and value of Plaintiff's Property during all times of injury caused by AFFF and/or other PFAS Products, and for such orders as may be necessary to provide full relief to address risks to the Plaintiff, including, but not limited to, the costs of:

    i.    Past and future testing at and around the sites throughout Plaintiff's Property where Defendants' AFFF and/or other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed and, thus, likely caused PFOS, PFOA or other PFAS contamination;

    ii.    Past and future treatment, removal and/or disposal of all soil, surface water, groundwater, sediments and other contaminated areas at and around the sites throughout Plaintiff's Property where Defendants' AFFF and/or other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed and which contain detectable levels of PFOS, PFOA or other PFAS until restored to non-detectable levels;

    iii.    Past and future monitoring of the soil, surface water, groundwater, sediments and other contaminated areas at and around the sites throughout Plaintiff's Property where Defendants' AFFF and/or other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed as long as there is a detectable level of PFOS, PFOA or other PFAS and restoration of Plaintiff's Property to their pre-discharge condition;

c.    Ordering Defendants to pay for all costs, in an amount that exceeds $75,000.00, related to damages arising from PFOS, PFOA and other PFAS contamination of Plaintiff's Property including, soils, surface water, groundwater, sediment, and other contaminated areas where Defendants' AFFF and/or other PFAS Products were transported, stored, used, handled, released, spilled, and/or disposed, according to proof, including, *inter alia*:

    i.    costs of investigation;

    ii.    costs of sampling, analysis and monitoring;

    iii.    costs of providing water from an alternate source;

    iv.    costs of installing and maintaining wellhead treatment;

     v.     costs of installing and maintaining wellhead protection program;

     vi.     costs of installing and maintaining an early warning system to detect PFOS, PFOA and any other PFAS before it reaches wells;

     vii.     costs of implementing biomonitoring programs for water, soil, air, and all other impacted environmental media or property in areas that have become contaminated by PFOS, PFOA or other PFAS;

     viii.     costs of remediating PFOS, PFOA and other PFAS at, on, in, under, or from Plaintiff's Property including groundwater, surface water, soil, sediment, and other impacted environmental media or property;

     ix.     costs of collecting and safely disposing of existing AFFF and other PFAS Products from Plaintiff's Property;

     x.     loss of tax revenue and other economic benefits;

     xi.     any other costs or other expenditures incurred to address contamination and injury attributable to PFOS, PFOA and/or other PFAS; and

     xii.     interest on the damages according to law;

d.     Equitable relief, including abatement of the nuisances complained of herein;

e.     Civil penalties payable to Plaintiff in the amount of $2,000 for each unconscionable act or practice of Defendants in violation of the Oklahoma Consumer Protection Act.

f.     Punitive damages;

g.     Costs (including reasonable attorneys' fees, expert fees, court costs, and other expenses of litigation);

h.     An order voiding the Chemours Transfers and recovering property and value transferred to Old DuPont;

i.     An order voiding the Old DuPont Transfers and recovering property and value transferred to New DuPont;

j.     An order voiding the Old DuPont Transfers and recovering property and value transferred to Corteva;

k.     An order enjoining New DuPont, as transferee, from distributing, transferring, capitalizing, or otherwise disposing of any proceeds from the sale of any business lines, segments, divisions, or other assets that formerly belonged to Old DuPont;

l.     An order enjoining Corteva, as transferee, from distributing, transferring, capitalizing, or otherwise disposing of any proceeds from the sale of any business lines, segments, divisions, or other assets that formerly belonged to Old DuPont;

m.     An order imposing constructive trust over the proceeds of the Chemours Transfers to Old DuPont for the benefit of Plaintiff;

n.     An order imposing constructive trust over the proceeds of the Old DuPont Transfers to New DuPont for the benefit of Plaintiff;

o.     An order imposing constructive trust over the proceeds of the Old DuPont Transfers to Corteva for the benefit of Plaintiff; and

p.     For such and other relief as the Court may deem proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby demand a jury trial on all causes of action for which a jury is available under the law.

Dated:  January 31, 2025          By:___*/s/ Matthew J. Sill*_____
                                            MATTHEW J. SILL, OBA#21547
                                            FULMER SILL
                                            1101 N. Broadway Ave., Ste. 102
                                            Oklahoma City, OK 73103
                                            Telephone: (405) 509-6300
                                            Facsimile: 1-800-978-1345
                                            Email:  msill@fulmersill.com

                                            Attorneys for Plaintiff